# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| STATE FARM FIRE & CAS. CO, | : | CIVIL ACTION |
| --- | --- | --- |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| PECO ENERGY CO., | : | NO. 19-2884 |
| *Defendant* | : | |

PRATTER, J.                                                                                JANUARY 24, 2020

## **MEMORANDUM**

State Farm Fire & Casualty Company, as subrogee of homeowner Domenic Roselli, brought suit against PECO Energy Company after Mr. Roselli's property was damaged due to an electrical surge. PECO moves to dismiss State Farm's complaint for lack of subject matter jurisdiction, arguing that (1) the doctrine of primary jurisdiction requires the Court to refer this case to the Pennsylvania Public Utilities Commission (PUC), or, alternatively, (2) the complaint fails to meet the amount-in-controversy requirement for establishing diversity jurisdiction.

The Court rejects PECO's primary jurisdiction argument because this case does not require agency expertise. Rather, this Court is entirely capable of handling this dispute. PECO's alternative argument, however, fares better. The Tariff governing PECO's electric service contains a provision, Rule 12.1, limiting PECO's liability to an amount less than the amount-in-controversy requirement in the absence of willful and/or wanton misconduct. State Farm counters that Rule 12.1 is an exculpatory clause which should be deemed void on public policy grounds. Because Rule 12.1 does not leave PECO entirely exempt from liability, the Court rejects State Farm's public policy argument. For the reasons discussed below, the Court grants PECO's motion to dismiss with leave for State Farm to amend its complaint.

1

## BACKGROUND

State Farm, as subrogee of homeowner Domenic Roselli, pleaded three counts in its complaint: a negligence claim, a breach of contract claim, and a breach of warranties claim. PECO's high-voltage primary electrical line came into contact with its lower-voltage secondary line, causing a power surge at Mr. Roselli's property. As a result of the surge, various appliances and parts of the electrical system on Mr. Roselli's property were damaged, amounting to approximately $80,000 in damages.

PECO supplies electric service to Mr. Roselli under the terms of a Tariff approved by the PUC. Rule 12.1 of the Tariff limits PECO's liability as follows:

> **12.1 LIMITATION ON LIABILITY FOR SERVICE INTERRUPTIONS AND VARIATIONS.**
>
> The Company does not guarantee continuous, regular and uninterrupted supply of service. The Company may, without liability, interrupt or limit the supply of service for the purpose of making repairs, changes, or improvements in any part of its system for the general good of the service or the safety of the public or for the purpose of preventing or limiting any actual or threatened instability or disturbance of the system. The Company is also not liable for any damages due to accident, strike, storm, riot, fire, flood, legal process, state or municipal interference, or any other cause beyond the Company's control.
>
> In all other circumstances, the liability of the Company to customers or other persons for damages, direct or consequential, including damage to computers and other electronic equipment and appliances, loss of business, or loss of production caused by any interruption, reversal, spike, surge or variation in supply or voltage, transient voltage, or any other failure in the supply of electricity shall in no event, unless caused by the willful and/or wanton misconduct of the Company, exceed an amount in liquidated damages equivalent to the greater of $1000 or two times the charge to the customer for the service affected during the period in which such interruption, reversal, spike, surge or variation in supply or voltage, transient voltage, or any other failure in the supply of electricity occurs. In addition, no charge will be made to the

customer for the affected service during the period in which such interruption, reversal, spike, surge or variation in supply or voltage, transient voltage, or any other failure in the supply of electricity occurs. A variety of protective devices and alternate power supplies that may prevent or limit such damage are available for purchase by the customer from third parties.

The Company makes no warranty as to merchantability or fitness for a particular purpose, express or implied, by operation of law or otherwise. To the extent applicable under the Uniform Commercial Code or on any theory of contract or products liability, the Company limits its liability in accordance with the previous paragraph to any Customer or third party for claims involving and including, but not limited to, strict products liability, breach of contract, and breach of actual or implied warranties of merchantability or fitness for an intended purpose.

## DISCUSSION

### I. PECO's Doctrine of Primary Jurisdiction Argument

PECO first argues that because issues in quality of service are governed by the Tariff and regulated by the PUC, the doctrine of primary jurisdiction gives the PUC exclusive jurisdiction over this dispute. The doctrine of primary jurisdiction "creates a workable relationship between the courts and administrative agencies wherein, in appropriate circumstances, the courts can have the benefit of the agency's views on issues within the agencies competence." *Poorbaugh v. Pennsylvania Pub. Util. Comm'n*, 666 A.2d 744, 749 (Pa. Commw. Ct. 1995) (citing *Elkin v. Bell Tel. Co. of Pennsylvania*, 420 A.2d 371, 376 (Pa. 1980)). It "requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 353 (1963). The Supreme Court of Pennsylvania explained the limited nature of this doctrine in *Elkin v. Bell Tel. Co. of Pennsylvania*, 420 A.2d 371 (Pa. 1980):

> Courts should not be too hasty in referring a matter to an agency, or to develop a "dependence" on the agencies whenever a controversy remotely involves some issue falling arguably within the domain of

3

> the agency's "expertise." "Expertise" is no talisman dissolving a court's jurisdiction. Accommodation of the judicial and administrative functions does not mean abdication of judicial responsibility . . . .
>
> [W]here the subject matter is within an agency's jurisdiction and where it is a complex matter requiring special competence, with which the judge or jury would not or could not be familiar, the proper procedure is for the court to refer the matter to the appropriate agency . . . . Where, on the other hand, the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility.

*Id.* at 377.

As State Farm points out, this case is similar to *Poorbaugh v. Pennsylvania Public Utility Commission*, 666 A.2d 744 (Pa. Commw. Ct. 1995). In *Poorbaugh*, the Commonwealth Court held that the Court of Common Pleas—not the PUC—exercised jurisdiction over a negligence suit brought against an electric utility company involving a barn fire caused by an electrical surge. *Id.* at 750. In doing so, the Commonwealth Court determined that the case was not a complex matter requiring the PUC's special expertise, and "[w]ith the assistance of expert testimony, there is no reason why a judge or jury could not determine whether [the utility company] had breached a duty of care owed to [the plaintiff] by allegedly causing an oversurge of electricity which resulted in a fire." *Id.* at 751. It also noted that because *Poorbaugh* involved only one customer located in one specific location on one single occasion, no inquiries concerning an entire geographic area or a disturbance affecting the general public—which typically require the PUC's expertise—were raised. *Id.* at 751. *Cf. DeFrancesco v. Western Pennsylvania Water Co.*, 453 A.2d 595, 597 (Pa. 1982) (finding that the PUC's expertise was unnecessary when litigating a matter not involving an inquiry into electrical service owed to the general public); *Feingold v. Bell of Pennsylvania*, 383 A.2d 791, 796 n. 7 (Pa. 1977) ("We concede that cases raising questions of the adequacy of utility

4

service to an entire geographic area may present problems which should be addressed initially by the PUC.").

The same is true here. PECO articulates no legitimate reason why the PUC would be better equipped than this Court to handle this simple property damage dispute.[1] To the extent expertise is required, PECO has not alleged any reason why the assistance of expert testimony would not suffice. Like in *Poorbaugh*, this matter concerns a single fire affecting only one customer in one specific location. The Court therefore rejects granting PECO's motion to dismiss on this basis.[2]

## II. PECO's Amount-In-Controversy Requirement Argument

PECO alternatively argues that State Farm fails to meet the amount-in-controversy requirement necessary to establish diversity jurisdiction. Specifically, PECO argues that Rule 12.1

---

[1] Instead, PECO cites to *Alderwoods, Inc. v. Pennsylvania Pub. Util. Comm'n*, 2017 Pa. Commw. Unpub. LEXIS 326 (Pa. Commw. Ct. May 10, 2017), a case involving an electrical fire caused by a utility pole knocked down due to a motor vehicle incident. After having its case referred from a trial court to the PUC, the plaintiff filed a petition for review and requested a declaration that the PUC was without jurisdiction to adjudicate its claims. *Id.* at **1-2. The Commonwealth Court determined that the plaintiff's request was premature because it first needed "to develop a record on the merits before the PUC and exhaust its administrative remedies prior to seeking review in [the Commonwealth Court's] *appellate* jurisdiction." *Id.* at *7 (emphasis in original). The Commonwealth Court in *Alderwoods* did not assess the merits of whether the trial court's referral to the PUC was proper.

Later in *Alderwoods*' procedural history, Justice Baer of the Supreme Court of Pennsylvania notably stated in his concurrence regarding the plaintiff's quashed notice of appeal:

> I write separately to express serious doubt as to whether the trial court and Public Utility Commission (PUC) were correct in having the PUC determine the utility's liability in this case. That issue has nothing to do with the PUC's expertise as a regulator of utilities. Indeed, the question of liability strikes me as a typical one that trial courts and juries in this Commonwealth answer every day.

*Alderwoods v. Pennsylvania Pub. Util. Comm'n*, 166 A.3d 304, 304 (Pa. 2017) (Baer, J., concurring).

[2] The Court notes State Farm's additional argument that it could not receive an "adequate and complete" administrative remedy from the PUC. Pl.'s Resp. at 3-4 (Doc. No. 9-1) (citing *Poorbaugh*, 666 A.2d at 748). Because other courts have bifurcated referrals to the PUC for liability-focused adjudications, *see, e.g., Alderwood*, 2017 Pa. Commw. Unpub. LEXIS 326, the Court focuses on State Farm's stronger argument concerning the doctrine of primary jurisdiction.

5

of the Tariff limits State Farm's remedies to an amount less than $75,000. State Farm counters that Rule 12.1 acts as an exculpatory clause and is therefore void on public policy grounds.

Diversity of citizenship is achieved when the parties are citizens of different states and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The parties do not dispute State Farm's establishment of the citizenship requirement.[3] As for the amount-in-controversy requirement, "[t]he rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount to justify dismissal." *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997), *as amended* (Feb. 18, 1997) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)). The Third Circuit Court of Appeals has further stated that "dismissal is appropriate only if the federal court is certain that the jurisdictional amount cannot be met." *Colum. Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995).

"A clause which limits but which does not entirely exempt a utility from liability is enforceable and will not be void on public policy grounds. Conversely, a clause which is truly exculpatory in nature, in other words, *one which absolves the utility of all liability*, is void as against public policy." *State Farm Fire & Cas. Co. v. PECO*, 54 A.3d 921, 927-28 (Pa. Super. Ct. 2012) (citations omitted) (emphasis added). *See, e.g., DeFrancesco*, 478 A.2d at 1306 (finding exculpatory a tariff provision stating that the utility "shall not in any way or under any circumstances be held responsible to any person or persons for any loss or damage for any deficiency in the pressure, volume or supply of water due to any cause whatsoever.").

---

[3] State Farm is an Illinois corporation with its principal place of business located in Illinois. PECO is a Pennsylvania corporation with its principal place of business located in Pennsylvania.

6

Both parties rely on a prior Superior Court of Pennsylvania case involving the same parties, *State Farm Fire & Cas. Co. v. PECO*, 54 A.3d 921 (Pa. Super Ct. 2012). PECO relies on Judge Shogan's majority opinion whereas State Farm points to Judge Wecht's concurring and dissenting opinion. In that case, the Superior Court of Pennsylvania held that a similar, prior version of Rule 12.1 was not an exculpatory clause because it did not expressly shield PECO from all liability. *Id.* at 930. First, the Superior Court noted that the prior Rule 12.1 did not limit a recovery amount to damages caused by PECO's willful and/or wanton misconduct. *Id.* Second, the court determined that the rule's limitation of remedies to the greater of liquidated damages of $500 or "two times the charge to the customer for the service affected" did not limit PECO's damages enough to consider it an exculpatory clause absolving PECO from all liability. *Id.* at 929-30. Third, the Superior Court rejected State Farm's argument that because the provision protected PECO from liability for damages attributable to "accidents," the provision essentially protected PECO from all liability for any damages. Instead, it determined that the rule's "accident" language allowed PECO to be liable for damages caused by "foreseeable" events. *Id.* at 929 (citing *Casper v. Am. Guar. & Liab. Ins. Co.*, 184 A.2d 247, 249 (Pa. 1962)).

In his concurring and dissenting opinion, Judge Wecht opined that: (1) the "accident" language was ambiguous and thus void; (2) the clauses the majority relied on had no substantive effect when applied; and (3) such a provision is against public policy because a citizen has essentially no choice but to accept the terms of the tariff if they want electricity. *See generally id.* at 934-40 (Wecht, J., concurring and dissenting). In addition to relying on Judge Wecht's concurring and dissenting opinion, State Farm also argues that Rule 12.1 should be void on public policy grounds because it disincentives PECO from using due care.

7

The Court agrees with Judge Shogan's majority opinion. First, the current version of Rule 12.1 again does not limit PECO's liability as to any damages caused by PECO's willful and/or wanton misconduct.[4] Second, although Rule 12.1 limits PECO's liability as to some claims to "liquidated damages equivalent to the greater of $1000 or two times the charge to the customer for the service affected" during a surge, this limitation—which provides for double the liquidated damages that the Superior Court of Pennsylvania approved in 2012—does not absolve PECO from enough liability to deem the rule exculpatory. Third, the Court agrees with the Superior Court's determination that barring PECO's liability for damage caused by accidents unambiguously permits PECO's liability for damages caused by foreseeable events.

Even so, the Court acknowledges State Farm's suggestion that ongoing factual investigations may reveal willful and/or wanton misconduct completed by PECO. Because damages resulting from willful and/or wanton misconduct are not limited by Rule 12.1, State Farm argues that it could in good faith meet the amount-in-controversy requirement if it can plead that PECO engaged in willful and/or wanton misconduct. In Pennsylvania, "wil[l]ful misconduct means that the actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue." *Evans v. Phila. Transp. Co.*, 212 A.2d 440, 443 (Pa. 1965). To prove wanton misconduct, a plaintiff must show that the tortfeasor "has knowledge of sufficient facts to cause a reasonable man to realize the existing danger for a sufficient period of time beforehand to give him a reasonable opportunity to take means to avoid the danger and, despite this knowledge, he recklessly ignores the other person's peril." *Fugagli v. Camasi*, 229 A.2d 735, 736 (Pa. 1967).

---

[4] In its surreply, State Farm relies on this very language to argue that the amount in controversy may be met if discovery reveals that PECO participated in willful and/or wanton misconduct. This realization cuts against its argument that Rule 12.1 precludes PECO from all liability.

8

In its surreply, State Farm asserts that the initial surge caused widespread losses and damages throughout the neighborhood and a gas leak, that PECO knew of the surge when Mr. Roselli contacted PECO, that PECO mistakenly believed that power was fully restored when it was not, and that PECO's representative admitted fault to Mr. Roselli. State Farm argues that these allegations and others may give rise to PECO's potential willful and wanton misconduct. None of these allegations—or any other allegations potentially giving rise to PECO's potential willful and wanton misconduct—however, are contained in State Farm's complaint.

Because Rule 12.1's liability limitations are applicable here and because State Farm has not yet pleaded any facts giving rise to PECO's potential willful and/or wanton conduct, the Court grants PECO's motion to dismiss. However, the Court grants State Farm an opportunity to allege facts concerning PECO's potential willful and wanton misconduct in an amended complaint.

## Conclusion

For the foregoing reasons, the Court finds that State Farm's complaint fails to plead diversity jurisdiction, grants PECO's motion to dismiss, and grants State Farm leave to amend its complaint. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE